UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DAVID KYLE TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-00089-TWP-DML |
| ) | |
| BRAD DEMAREE, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on Defendant Brad Demaree's ("Demaree") Motion for Summary Judgment. (Dkt. 50.) Plaintiff David Kyle Turner ("Turner"), *pro se*, filed this action on April 30, 2019, contending that his Constitutional Rights were violated by Demaree. (Dkt. 1.) Turner contends that Demaree, a deputy with the Jefferson County Sheriff's Department, applied excessive force when he forced Turner to the ground, placed him in handcuffs, then struck him in the nose with his elbow while Turner was not resisting. For the reasons discussed in this Order, summary judgment is **granted**.

**I.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences

in that party's favor. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.   FACTUAL BACKGROUND

When deciding motions for summary judgment, courts generally view the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). But in this case, the determination of which facts to rely upon is complicated by the fact that Turner pled guilty to resisting arrest, and Demaree's statement about the incident, in the form of a Probable Cause Affidavit, was incorporated into the factual basis for Turner's guilty plea. (Dkt. 52-1; Dkt. 52-2 at 6.) In the plea agreement, Turner acknowledged that he had reviewed Demaree's Probable Cause Affidavit and that the facts contained in it were true. (Dkt. 52-2 at 6.) Therefore, Turner is bound by the factual basis established at his guilty plea hearing, which includes Demaree's statement of the incident. *United States v. Evans*, 576 F.3d 766, 770 (7th Cir. 2009). Turner cannot argue facts in this litigation that contradict the factual basis he previously admitted. *Id*. Therefore, for the

purposes of the Demaree's summary judgment Motion, the following facts include those admitted by Turner in his guilty plea factual basis and any other facts asserted by Turner that do not contradict his prior factual basis.

On December 7, 2018, Turner was staying at the home of Jason Wells ("Wells"). (*See* Dkt. 52-3 at 16-18.) That night, he drank "seven to eight shots" of brandy between 10:00 p.m. and 12:30 a.m. *Id.* at 18, 20. At approximately 12:30 a.m. on December 8, 2018, Turner got into a vehicle owned by Wells and drove away from the residence. *Id.* at 19. Only about a mile into his drive, Turner ran the vehicle off the road, abandoned it, and returned to Wells' home. *Id.* at 21; Dkt. 52-1.

Demaree was called to the scene of the wrecked vehicle shortly after the crash. (Dkt. 52-1.) He approached the vehicle to check if anyone was inside and "noticed the immediate smell of an alcoholic beverage." *Id.* at 3. After investigating the vehicle, Demaree ran the license plate number to determine who the owner was. He discovered that the vehicle was registered to an individual named "Jason Wells" who lived nearby. Demaree then drove to Wells' home to inform him about the accident. *Id.*

As he approached Wells' residence, Demaree noticed a person, who he later determined was Turner, standing near Wells' front porch. *Id*. He then observed Turner enter Wells' home. *Id*. Moments later, Demaree heard someone exit the back door. *Id.*

Demaree spoke briefly with Wells. *Id.* After being advised of the accident, Wells told Demaree that he had not given anyone permission to use the wrecked vehicle. *Id*. Wells then gave Demaree express permission to search the premises. *Id.* at 3-4. Demaree immediately walked to the backyard, searching for the person who had fled from the back of the house. *Id.* at 4. Demaree searched a shed in the backyard but was unable to find anyone . *Id*. When he looked under the

shed, however, he discovered Turner hiding. *Id*. Demaree describes what happened next in his Probable Cause Affidavit :

> I gave [Turner] numerous commands to come out from underneath the shed, which he eventually complied with. He exited the north side, and as he was crawling out, I noticed a pocket knife in his right pants pocket. I secured this for officer safety and had the subject stand on his feet. It should be noted that I had to assist him to his feet and he had the overwhelming odor of an alcoholic beverage on his breath. Once standing I instructed him to place his hands on the wall. I attempted to continue my pat down and he just kept saying "ain[']t nobody trying to fight you." He took his hands off the wall numerous times even after being told otherwise. He was trying to place his hands in his jacket pocket, which I had not yet checked for any further weapons. **As I was attempting to continue my pat down, he stuck his left hand back into his jacket pocket. At that point I had told him numerous times for his hands to remain on the wall. He was also trying to push off the wall and back onto Deputy Miller and I. I took control of his left wrist and performed a straight arm bar take down. The subject was assisted to his stomach on the ground where he continued [to] st[r]uggle. Deputy Miller and I were able to place him into handcuffs after a short period.** While he was on the ground I then continued to check for weapons on his person. **I had rolled him onto his side and was facing his chest and stomach when he brought his left knee up and tried to strike me in the face. I was able to move away from the attempted strike and performed one forearm strike across his face to counter his action.** I finished searching him for weapons and assisted him to his feet.

(Dkt. 52-1 at 4-5 (emphasis added).)

Footage from Demaree's body cam is consistent with his recounting of events prior to his taking Turner to the ground. (Dkt. 54.) Although it is sometimes difficult to decipher events due to darkness, the body cam video shows that Turner was hiding underneath the shed. Demaree instructs Turner to stand up and to "keep your hands on the wall. " Turner appears intoxicated and repeatedly mentions "fighting" while Demaree performs the pat down search. The video abruptly stops before Demaree takes Turner to the ground and handcuffs him. In his Affidavit, Demaree affirms that Turner's movement during the search hit an exterior button on the body camera which caused it to stop recording. Demaree only noticed that the camera had stopped recording after Turner was fully subdued, at which time he turned the camera on so that it could continue

4

recording. (Dkt. 52-5.) The two discuss that Turner's nose is bleeding and Demaree responds "you tired to knee me in the face."

Although some of the key events were not captured on video, Turner is bound by his acceptance of the facts contained in the probable cause affidavit. Furthermore, he testified at his deposition that before Demaree struck him in the face, Turner lifted his knee as he attempted to stand up because he was cold, despite not being ordered to stand. (Dkt. 52-3 at 43-44.) After subduing Turner, the deputies assisted him to the front of Wells' residence and eventually Turner was placed into Deputy Charles Miller's ("Miller") vehicle and transported to the Jefferson County Jail. (Dkt. 52-1 at 5, Dkt. 52-5 at 3.) The video evidence reflects that, as Turner was being placed in Miller's car, Miller asked Demaree whether he should take Turner to the hospital or the jail. Demaree responded that Turner would be cleared at the jail and advised that if that did not happen, Miller could let Demaree know and Demaree would take Turner to the hospital. After his arrest, Turner was booked into the Jefferson County Jail. (Dkt. 52-3 at 28.) Turner's face remained painful to the touch for a few weeks after his arrest and he submitted multiple requests for medical care, but he never received any medical treatment related to his injuries. *Id.* at 28; 52–53.

### III.   DISCUSSION

The Court determined that two claims in Turner's Complaint shall proceed: "that Sheriff Deputy Brad Demaree used excessive force against him and denied him medical treatment". (Dkt. 7 at 2.) Demaree contends that his use of force was objectively reasonable, he was not involved in providing medical treatment to Turner, and he is entitled to qualified immunity.

**A.   Excessive Force Claim**

The Fourth Amendment protects arrestees from objectively unreasonable excessive force during their arrests. *Avina v. Bohlen*, 882 F.3d 674, 678 (2018) (citing *Graham v. Connor*,

490 U.S. 386, 396 (1989)). A claim that an officer used excessive force in seizing an individual is "analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490 U.S. at 388. "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id*. at 396 (citations and internal quotation marks omitted). Factors relevant to the inquiry include: "'[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Baird v. Renbarger,* 576 F.3d 340, 344 (7th Cir. 2009) (alterations in original) (quoting *Graham*, 490 U.S. at 396).

An officer's use of force is "judg[ed] from the totality of the circumstances at the time of the [seizure]." *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013) (alterations in original) (citation and internal quotation marks omitted). "'[W]hen material facts (or enough of them to justify the conduct objectively) are undisputed, then there would be nothing for a jury to do except second-guess the officers.'" Therefore, "[i]n this situation...the reasonableness of the force used is a legal question." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (quoting *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003)).

Turner alleges Demaree forced him to the ground and then hit him in the nose after Turner raised his knee toward Demaree.[1] The Probable Cause Affidavit reflects that Demaree performed a straight arm bar maneuver after Turner refused several orders to keep his hands on the shed and persisted in pushing himself into Demaree and Miller. Demaree also struck Turner in the face

---

[1] In his deposition, Turner raised two additional uses of force that were not raised in his Complaint, thus the Court does not address them. First, Turner testified that the deputies "jerked [him] up and about broke [his] … arm" after Demaree struck him. (Dkt. 52-3 at 27.) Although the Court does not decide this claim, it would suffer the same fate as Turner's actual claim in this lawsuit. The Probable Cause Affidavit reflects that Turner continued to resist as the deputies moved him from the shed to the front of Wells' property. Jerking his arm in a manner that hurt but caused no injury is reasonable under such circumstances. Turner also alleges that Deputy "C.J." Miller took him to the ground for no reason, but Miller is not a defendant in this action so the Court does not address this allegation.

6

after Turner attempted to knee Demaree.  Turner is bound by these facts because he accepted them as the factual basis for his guilty plea.  *Evans*, 576 F.3d at 770.  Turner disputes that he was trying to knee Demaree but admits that he raised his knee without being ordered to do so.  (Dkt. 52-3 at 43-44.)

"An officer who has the right to arrest an individual also has the right to use a reasonable degree of physical force… to effectuate the arrest." *Graham,* 490 U.S. at 396*.*  Turner was found hiding from Demaree under a shed.  He was intoxicated and had trouble standing.  He was not complying with Demaree's orders to keep his hands on the shed.  The accepted facts described in the probable cause affidavit reflect that Turner raised his knee toward Demaree and Demaree responded with one strike to Turner's face.  Considering the three factors set forth by the Seventh Circuit — the severity of the crime, whether there is an immediate threat to the officer's safety, and whether the plaintiff was actively resisting — the Court finds, based on the video evidence and the accepted facts set forth in the probable cause affidavit, that Demaree's use of force was reasonable and not greater than necessary.

Because there are no material facts in dispute, Demaree is entitled to summary judgment on Turner's excessive force claim.[2]

**B.**     **Deliberate Indifference Claim**

Turner alleges that Demaree was deliberately indifferent when he failed to ensure that Turner received medical attention at the jail.  The video reveals that Miller transported Turner to the jail while Demaree stayed at the scene to await a tow truck for the wrecked vehicle.

At the time of the events, Turner had not yet received a judicial determination of probable cause, so the Fourth Amendment standard of reasonableness governs.  *See Ortiz v. City of Chicago*,

---

[2] Because the Court has found that Demaree's use of force was not unreasonable, the Court need not address his qualified immunity argument.

7

656 F.3d 523, 530 (7th Cir. 2011).  To determine whether a defendant responded reasonably to a plaintiff's medical needs, the court considers four factors: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Id*.

Here, Demaree was aware that he had struck Turner in the face and that Turner's nose was bleeding.  There was no indication that the injury was life-threatening or required emergency care before transporting Turner to jail.  Demaree's statements on the video indicate a reasonable assumption that jail intake staff would assess any medical needs Turner might have.  Demaree remained at the scene to facilitate removal of the wrecked vehicle from the roadside.  On balance, the four factors lead the Court to conclude that no reasonable juror could find Demaree's actions on the scene unreasonable.

"For constitutional violations under § 1983 or *Bivens*, a government official is only liable for his or her own misconduct."  *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (citation and quotation marks omitted).  Thus "[a] damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation."  *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'") (citation and quotation marks omitted).

As Demaree was not at the Jefferson County Jail when Turner was transported there, Demaree was not personally involved in the assessment of Turner's injuries, or in any decision to deny him that assessment.  Although Turner testified during his deposition that he submitted several health care request forms while at the jail, there is no evidence that Demaree ever received

these requests or was responsible for responding to them.  Because he was not personally involved in the alleged decision to deny Turner a medical assessment or treatment, Demaree is entitled to summary judgment on this claim.

## IV.  CONCLUSION

For the reasons stated above, Defendant Brad Demaree's Motion for Summary Judgment, (Dkt. [50]), is **GRANTED**.  Judgment consistent with this Order, and the Screening Order, (Dkt. [7]), shall now issue.

**SO ORDERED.**

Date:  5/11/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David Kyle Turner, #146427
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, Indiana  46135

Justin M. Schaefer
SCHILLER BARNES MALONEY PLLC
jschaefer@sbmkylaw.com